UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH ERICKSON,

    Plaintiff,

v.

                                  Case No.: 2:24-cv-30-JLB-KCD

EVANSTON INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 43) and Plaintiff's Motion for Partial Summary Judgment (Doc. 44). Plaintiff and Defendant responded to one another's summary judgment motions.[1] (Docs. 45, 47). Only Defendant filed a reply in support of its respective motion. (Doc. 48). After careful review of the record, Defendant's Motion for Partial Summary Judgment (Doc. 43) is **GRANTED in part and DENIED in part**, and

---

[1] Plaintiff's Response to Defendant's Motion for Partial Summary Judgment (Doc. 47) was untimely. *See* M.D. Fla. Loc. R. 3.01(c) (providing that "a party may respond within twenty-one days after service to a motion . . . for summary judgment," and explaining that "[i]f a party fails to timely respond, the motion is subject to treatment as unopposed."). But this Circuit expresses a "strong preference that cases be heard on the merits," *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985), and "strive[s] to afford a litigant his or her day in court, if possible." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005); *see Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 (11th Cir. 2014). These motions are ripe for resolution. Accordingly, the Court, in its discretion, accepts Plaintiff's Response to Defendant's Motion for Partial Summary Judgment (Doc. 47) as filed and will consider it on its merits. *See Fluor Intercontinental, Inc. v. IAP Worldwide Servs., Inc.*, 533 F. App'x 912, 922 n.35 (11th Cir. 2013) (observing that "a district court has discretion to waive or excuse noncompliance with its local rules") (citation omitted); *Vinnett v. Gen. Elec. Co.*, 271 F. App'x 908, 914–15 (11th Cir. 2008) (noting that the district court's application of its local rules is reviewed for an abuse of discretion).

1

Plaintiff's Motion for Partial Summary Judgment (Doc. 44) is **DENIED**.

## BACKGROUND

Kenneth Erickson ("Plaintiff" or "Mr. Erickson") obtained a homeowner's insurance policy (the "Policy") from Evanston Insurance Company ("Defendant" or "Evanston") to cover a property located in Fort Myers, Florida (the "Property"). (Doc. 43 at ¶ 1; Doc. 43-1; Doc. 44 at ¶ 1; Doc. 45 at ¶ 1; Doc. 47 at ¶ 1). Defendant issued a policy covering the Property from August 26, 2022, to August 26, 2023. (Doc. 43 at ¶ 1; Doc. 43-1; Doc. 44 at ¶ 1; Doc. 45 at ¶ 1; Doc. 47 at ¶ 1). On September 28, 2022, while the Policy was in full force and effect, the Property sustained physical damage from Hurricane Ian. (Doc. 43 at ¶¶ 6–7; Doc. 44 at ¶ 3; Doc. 45 at ¶ 3; Doc. 47 at ¶¶ 6–7). Flood and storm surge water infiltrated the Property, creating an approximately four-foot "flood cut" throughout the Property's entire first floor.[2] (Doc. 43 at ¶ 7; Doc. 43-4 at 44:20–46:21; Doc. 47 at ¶ 7).

Mr. Erickson reported the loss to Evanston on or about October 3, 2022.[3] (Doc. 43 at ¶ 8; Doc. 43-5 at 16:1–3; Doc. 47 at ¶ 8). Evanston investigated Mr. Erickson's claim and, on January 26, 2023, issued a $108,947.10 payment for covered damages to the Property. (Doc. 43 at ¶ 12; Doc. 47 at ¶ 12). This payment was based upon an estimate from Evanston's field adjustor following inspection of

---

[2] Engineers often determine storm surge height at a property by reviewing the height of the water line, also known as the cutout line, visible in photographs. (Doc. 43-4 at 44:20–46:9). The term "flood cut" refers to the height measurement of this water or cutout line. (*Id.*).
[3] Mr. Erickson also submitted a flood insurance claim with his flood insurance carrier, which paid him the dwelling coverage policy limit amounting to $250,000. (Doc. 43 at ¶ 9; Doc. 43-7; Doc. 47 at ¶ 9).

the Property. (Doc. 43 at ¶ 13; Doc. 43-8; Doc. 47 at ¶ 13). The estimate identified water damage amounting to a cash value of $39,761.95, but it limited Mr. Erickson's recoverable amount to $10,000 because of what Evanston argues to be a water damage sublimit within the Policy. (Doc. 43 at ¶ 14; Doc. 43-8 at 18). The applicable sublimit within the Policy provides:

**WATER DAMAGE COVERAGE SUBLIMIT**

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.

| Water Damage Coverage Sublimit: $10,000 |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the **Declaration**. |

The following limitations are added:
Water Damage Limit

a) Regardless of cause, the most we will pay under all coverages combined, for the repair of covered water damage, is the amount shown in the Declarations page or in the schedule above.

b) This is not additional insurance, and does not increase the limit of liability for Coverage A - Dwelling, Coverage B - Other Structures, Coverage C - Personal Property, Coverage D – Loss of Use or any other coverage part.

(Doc. 43-1 at 56).

Mr. Erickson then sought to obtain a damage estimate of his own. (Doc. 43 at ¶ 16; Doc. 47 at ¶ 16). But rather than utilize an independent third party, Mr. Erickson procured an estimate from his own business, Erickson's Drying Systems Corp. ("EDS"). (Doc. 43 at ¶ 16; Doc. 47 at ¶ 16). EDS's estimate, prepared by Mr. Erickson's ex-wife, Christine Erickson, totaled $1,888,054.78. (Doc. 43 at ¶ 16; Doc. 43-9; Doc. 47 at ¶ 16). Mr. Erickson provided Evanston with EDS's estimate on June 2, 2023. (Doc. 43 at ¶ 16; Doc. 47 at ¶ 16). That same day, Mr. Erickson also provided Evanston with a contents estimate totaling $1,002,559.92 in replacement cost value ("RCV") and $701,791.94 in actual cost value ("ACV"). (Doc. 43 at ¶ 17;

Doc. 47 at ¶ 17). On June 26, 2023, Mr. Erickson executed a Sworn Statement in Proof of Loss ("SPOL"), claiming a loss of "$2,890,615.00 minus [any applicable] deductible." (Doc. 43 at ¶ 18; Doc. 43-11 at 1; Doc. 47 at ¶ 18). This amount combined the EDS estimate and Mr. Erickson's estimate of the Property's contents. (Doc. 43 at ¶ 18; Doc. 47 at ¶ 18).

Because Mr. Erickson did not claim contents in the loss initially reported to Evanston, Evanston engaged contents specialists to inspect the claimed contents. (Doc. 43 at ¶ 19; Doc. 47 at ¶ 19). On November 21, 2023, Evanston issued payment for an additional $56,796.66 for covered damages to the contents of the Property. (Doc. 43 at ¶ 19; Doc. 47 at ¶ 19). In total, Evanston paid Mr. Erickson $168,743.76 for covered damages to the Property, subject to the terms, conditions, limitations, exclusions, and endorsements within the Policy. (Doc. 43 at ¶ 20; Doc. 47 at ¶ 20).

Mr. Erickson filed suit in Florida state court on December 12, 2023, alleging that Evanston breached the Policy by "fail[ing] to provide complete coverage for the physical damages that occurred" to the Property during the policy period. (Doc. 3 at ¶ 19). Evanston promptly removed the action to federal court. (Doc. 1).

Evanston filed a Motion for Partial Summary Judgment (Doc. 43) on February 27, 2025. Mr. Erickson filed an untimely Response (Doc. 47) that the Court, in its discretion, accepted in order to resolve this matter on the merits.[4] Evanston filed a timely reply. (Doc. 48). Mr. Erickson also filed his own Motion for

---

[4] *Supra* note 1.

4

Partial Summary Judgment (Doc. 44) on February 28, 2025, and Evanston filed a timely Response (Doc. 45).  Both motions (Docs. 43, 44) are now before the Court for disposition.

## LEGAL STANDARD

When a case is removed from state to federal court on the basis of diversity of citizenship, the federal court applies state substantive law and federal procedural law.  *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law." *Id.*  "[A] mere scintilla of evidence" does not create a genuine issue of material fact, so a nonmoving party may not simply state that "the jury might, and legally could, disbelieve the moving party's evidence." *Hinson v. Bias*, 927 F.3d 1103, 1115–16 (11th Cir. 2019) (citation and internal quotation marks omitted).

Courts may not make credibility determinations or weigh the evidence when reviewing the record. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) ("On summary judgment . . . [n]either [the Eleventh Circuit] nor the district court are to undertake credibility determinations or weigh the evidence."). Instead,

courts view evidence and draw all reasonable inferences in the nonmoving party's favor. *Rojas v. Fla.*, 285 F.3d 1339, 1341–42 (11th Cir. 2002). But "an inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982). The ultimate question for the Court on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## DISCUSSION

The Court will address each party's motion for partial summary judgment (Docs. 43, 44) in turn.

### I. Evanston's Motion for Partial Summary Judgment

Evanston's Motion for Partial Summary Judgment (Doc. 43) requests judgment finding that: (a) flood and/or storm surge damage is explicitly excluded from coverage, precluding Mr. Erickson from recovering for damage to the first floor of the Property; (b) Mr. Erickson is not entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit, and (c) Evanston is not liable to Mr. Erickson for water damage to the Property beyond that which it has already paid. (Doc. 43 at 2).

Mr. Erickson's Response (Doc. 47) does not address Evanston's arguments that flood and/or storm damage is explicitly excluded from coverage. (*See generally* Doc. 47). Regarding Evanston's argument about the $10,000 water damage

sublimit, Mr. Erickson contends that the water damage sublimit within the Policy does not apply to damage caused by rain. (Doc. 47 at 4–5). To support this contention, Mr. Erickson quotes without citing[5] to a definition within the "exclusions" section of the Policy, which defines "water" as "[f]lood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge[.]" (Doc. 43-1 at 23; Doc. 47 at ¶ 4).

Evanston's Reply (Doc. 48) argues that the water damage sublimit within the Policy applies. (*See generally* Doc. 48). Evanston contends that the language of the Policy is clear and unambiguous in stating that, regardless of cause, the most Evanston will pay for the repair of *covered* water damage is $10,000. (*Id.* at 4–5). Thus, so the argument goes, it is irrelevant whether rain is included within the definition of "water" provided in the policy exclusion because Mr. Erickson's recovery for water damage would be capped at $10,000 regardless, and Evanston paid Mr. Erickson $10,000 for water damage to the Property. (*Id.* at 5–6; *see* Doc. 43-1 at 56; Doc. 43-8 at 18). Evanston bolsters its argument by explaining that, even if the Court finds that the Policy is unclear or ambiguous because it includes both the water damage sublimit and the policy exclusion for certain forms of water, Florida law provides that, to the extent an endorsement is inconsistent with the

---

[5] Mr. Erickson's counsel is advised that, if he is going to rely upon a particular contractual provision as the cornerstone of his argument to oppose a motion for summary judgment, it is his obligation to cite to the page on which that language resides. *See Chavez v. Sec'y, Fla., Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").

body of the policy, the endorsement controls. (Doc. 48 at 5). Evanston posits that Mr. Erickson's argument conflates policy exclusions (*e.g.*, water) with policy endorsements (*e.g.*, the Policy's Water Damage Sublimit Endorsement). (*Id.*).

> **A.  Whether flood and/or storm surge damage is explicitly excluded from coverage, precluding Mr. Erickson from recovering for damage to the first floor of the Property.**

Evanston first seeks partial summary judgment on the issue of whether flood and/or storm surge damage is explicitly excluded from coverage under the Policy, and if so, whether Mr. Erickson is necessarily precluded from recovering for damage to the first floor of the Property. (Doc. 43 at 14–18). Mr. Erickson's Response does not address these issues. (*See generally* Doc. 47).

The Court starts, as it should, with the Policy's language:

**SECTION I – EXCLUSIONS**

> **A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . .
>
> > **3. Water**
> > This means:
> >
> > > **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
> > >
> > > **b.** Water which:
> > >
> > > > **(1)** Backs up through sewers or drains; or

> > **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;
>
> **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or
>
> **d.** Waterborne material carried or otherwise moved by any of the water referred to in A.3.a. through A.3.c. of this exclusion.
>
> This Exclusion A.3. applies regardless of whether any of the above, in A.3.a. through A.3.d., is caused by an act of nature or is otherwise caused. This Exclusion A.3. applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.
>
> However, direct loss by fire, explosion or theft resulting from any of the above, in A.3.a. through A.3.d., is covered.
>
> . . .

(Doc. 43 at ¶ 3; Doc. 43-1 at 23–24; Doc. 47 at ¶ 3). "Under Florida law, an insurance policy is a contract, and ordinary contract principles govern its interpretation and construction." *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1178–79 (11th Cir. 2023) (citing *Am. Strategic Ins. Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. 2d DCA 2006)); *see also Commodore, Inc. v. Certain Underwriters at Lloyd's Lond.*, 342 So. 3d 697, 700 (Fla. 3d DCA 2022); *Allstate Fire & Cas. Ins. Co. v. Hradecky*, 208 So. 3d 184, 186 (Fla. 3d DCA 2016). Thus, "Florida law provides that insurance contracts are construed in accordance

with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (citation omitted). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* (citations omitted). "Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011) (citation omitted).

Here, the Exclusions clause of the Policy provides that Evanston does not insure for loss caused directly or indirectly by certain forms of water, which is defined to include, among other things, "[f]lood . . . whether or not driven by wind, including storm surge." (Doc. 43-1 at 23). Mr. Erickson does not point to any contradictory provisions of the Policy that would make this provision ambiguous. (*See generally* Doc. 47). The Court therefore finds that the Policy does not apply to damage caused by flood or storm surge.

Whether Mr. Erickson is precluded from recovering for *all* damage to the first floor of the Property is another question. The Exclusions clause of the Policy states that loss identified within that clause "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Doc. 43-1 at 23). Evanston argues that this language is an anti-concurrent causation provision that precludes coverage for all damage to the Property on the first floor, and that no

genuine dispute of material fact remains as to this issue because (a) Mr. Erickson has presented no evidence that a covered peril (*e.g.*, wind) was the sole cause of the claimed damages to the first floor of the Property, and (b) the testimony provided in this case indicates that the entire first floor of the Property was affected by storm surge. (Doc. 43 at 15).

"An anti-concurrent cause provision is a provision in a first-party insurance policy that provides that when a covered cause and noncovered cause combine to cause a loss, all losses directly and indirectly caused by those events are excluded from coverage." *Liberty Mut. Fire Ins. Co. v. Martinez*, 157 So. 3d 486, 487 n.1 (Fla. 5th DCA 2015) (citation omitted). Florida courts consistently hold that first-party insurance contracts with identical anti-concurrent cause provisions to the one at issue here preclude coverage when damage to an insured's property is caused by both a covered and an excluded event. *See Sec. First Ins. Co. v. Czelusniak*, 305 So. 3d 717, 719 (Fla. 3d DCA 2020) (finding that an insured's loss was excluded from coverage due to an anti-concurrent cause provision that employed the exact language used in the Policy at issue here); *Liberty Mut. Fire Ins. Co. v. Martinez*, 157 So. 3d 486, 487–89 (Fla. 5th DCA 2015) (same); *see also Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1317–21 (M.D. Fla. 2002) (collecting cases). As such, the Court finds that the Policy's anti-concurrent cause provision is valid and precludes coverage for damage to the Property caused by both covered and uncovered events.

Mr. Erickson provided no response to Evanston's contention that he "has

presented no evidence that a covered peril . . . was the sole cause of the claimed damages to the first floor of the Property" (*see generally* Doc. 47), and he admitted that flood and/or storm surge waters impacted the entire first floor throughout the Property (Doc. 43 at ¶ 7; Doc. 47 at ¶ 7).  However, Mr. Erickson did not admit that flood and/or storm surge waters were partial or sole *causes* of all of the claimed damage on the first floor of the Property.  Evanston has not cited record evidence to establish this either.  (*See* Doc. 43 at 14–18).  Therefore, the Court declines to grant partial summary judgment as to Mr. Erickson's entitlement to recover for damage to the first floor of the Property.

>   **B.  Whether Mr. Erickson is entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit.**

Evanston next seeks partial summary judgment on the issue of whether Mr. Erickson is entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit.  (Doc. 43 at 19–22).  The applicable sublimit within the Policy provides that the water damage coverage sublimit is $10,000 and that, "[r]egardless of cause, the most [Evanston] will pay under all coverages combined, for the repair of covered water damage, is [that] amount . . . ." (Doc. 43-1 at 56).

Mr. Erickson neither disputes that the Policy contains a water damage sublimit of $10,000, nor does he argue that the water damage sublimit is unenforceable.  (Doc. 47 at ¶ 4).  He only disputes whether the water damage sublimit applies to water damage caused by rain.  (Doc. 47 at 4–5).  In support of his contention, Mr. Erickson points to a definition within the "exclusions" section of the

12

Policy, which defines "water" as "[f]lood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge[.]"  (Doc. 43-1 at 23; Doc. 47 at ¶ 4).  Evanston posits that Mr. Erickson's argument conflates policy exclusions (*e.g.*, water) with policy endorsements (*e.g.*, the Policy's Water Damage Sublimit Endorsement).  (Doc. 48 at 5).  The Court agrees.

As explained, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."  *Auto-Owners Ins. Co.*, 756 So. 2d at 34 (citations omitted).  The language used in the Policy's water damage sublimit and water exclusion is clear and unambiguous.  Thus, "no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses."  *N. Pointe Cas. Ins. Co.*, 62 So. 3d at 1282 (citation omitted).

The language Mr. Erickson's argument relies upon is a definition of water listed under the "exclusions" section of the Policy.  (Doc. 47 at ¶ 4).  This section of the Policy provides that Evanston "do[es] not insure for loss caused directly or indirectly" by any of the items within that section, including specific categories of water.  (Doc. 43-1 at 23).  In other words, the Policy provides that losses caused by items listed within that section are *not* covered losses.  Thus, even if Mr. Erickson were correct that rain is not included in the definition of water listed under the "exclusions" section of the Policy (he is not), it would not matter—such a conclusion would only mean that rain would constitute covered water damage under the Policy.

13

The Policy's water damage sublimit would still limit the amount Evanston pays to repair covered water damage to no more than $10,000. (Doc. 43-1 at 56). Therefore, the Court finds that Mr. Erickson is not entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit.

### C. Whether Evanston is liable to Mr. Erickson for water damage to the Property beyond that which it has already paid.

The Policy's water damage sublimit limits the amount that Evanston pays for the repair of covered water damage to no more than $10,000 (Doc. 43 at ¶ 4; Doc. 43-1 at 56; Doc. 47 at ¶ 4), and Evanston paid Mr. Erickson $10,000 for the repair of covered water damage (Doc. 43 at ¶ 15; Doc. 43-8 at 18; Doc. 47 at ¶ 15). Thus, the Court finds that Evanston is not liable to Mr. Erickson for water damage to the Property beyond that which it has already paid.

Therefore, Evanston's Motion for Partial Summary Judgment (Doc. 43) is **GRANTED in part and DENIED in part**. The Court finds the Policy does not apply to damage caused by flood or storm surge, the Policy's anti-concurrent cause provision is valid and precludes coverage for damage to the Property that was caused by both covered and uncovered events, Mr. Erickson is not entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit, and Evanston is not liable to Mr. Erickson for water damage to the Property beyond that which it has already paid. The Court otherwise denies Evanston's Motion for Partial Summary Judgment (Doc. 43).

## II. Mr. Erickson's Motion for Partial Summary Judgment

Mr. Erickson's Motion for Partial Summary Judgment (Doc. 44) argues that the Policy is an "all risks" policy that provides coverage for all direct physical loss unless otherwise excluded, and that he has already satisfied the burden of proof required for suits regarding all risks policies under Florida law. (Doc. 44 at 4–5). According to Mr. Erickson, Florida law provides that a plaintiff suing under an all risks policy bears the initial burden of proving that the insured property suffered a loss while the policy was in effect. (*Id.*). Once this burden is met, the burden shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms. (*Id.*). Mr. Erickson contends that, because Evanston admitted that his Property sustained a direct physical loss during the policy period for the subject claim, there remains no genuine issue of material fact regarding his initial burden of proof. (*Id.*).

Evanston's Response (Doc. 45) disputes that the Policy is an all risks policy. (Doc. 44 at ¶ 2; Doc. 45 at ¶ 2). This is a critical distinction, as Mr. Erickson's burden depends upon the type of policy at issue. If the Policy is deemed an all risks policy, Mr. Erickson does not have to prove that the loss he suffered was due to a peril falling within the Policy's coverage; but if the Policy is a named perils policy, Mr. Erickson has the burden of proving that the loss he suffered was due to a *covered* cause. *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire and Marine Ins. Co.*, 944 F. Supp. 886, 892 (M.D. Fla. 1996) (citation omitted); *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 446 F. Supp. 415, 420 (M.D. Fla. 1977), *aff'd in part,*

15

*remanded in part*, 632 F.2d 424, 427 (5th Cir. 1980).[6]

"An all risk[s] policy is one which provides coverage against all risks, the words typically being inserted in writing, covering every loss that may happen except by the fraudulent acts of the insured." *Int'l Ship Repair & Marine Servs., Inc.*, 944 F. Supp. at 891 (citation omitted). "Any time an insurer decides to draft an insurance policy which provides coverage for 'other causes of whatsoever nature' and 'all other perils, losses, and misfortunes,' it intends to provide 'all risk' coverage to its insured, not simply a covered 'perils' policy." *Id.* at 892. Conversely, a named perils policy covers only those stated perils it includes. *Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Cont. No. 242/99*, 930 So. 2d 756, 758 (Fla. 4th DCA 2006).

Mr. Erickson neither identifies nor could the Court find any language within the Policy indicating that Evanston intended to provide all risk coverage. (*See generally* Doc. 44). Instead, the Policy expressly delineates what the policy does and does not cover for a property's dwelling and structures, which is the antithesis of the nature of an all risks policy:

**SECTION I – PERILS INSURED AGAINST**

> **A. COVERAGE A – Dwelling And Coverage B – Other Structures**
>
>> **1.** We insure against direct physical loss to property described in Coverages A and B.

---

[6] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206,1207 (11th Cir.1981), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

      **2.** We do not insure, however, for loss:

          **a.** Excluded under Section I – Exclusions;

          **b.** Involving collapse, including . . .

            . . .

          **c.** Caused by:

              **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system . . .

                . . .

              **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not . . .

                . . .

              **(3)** Theft in or to a dwelling under construction . . .

        . . .

(Doc. 43-1 at 20).[7] Similarly, the section of the Policy describing insurance coverage for personal property also delineates the personal property that is and is not covered under the Policy:

    **SECTION I – PERILS INSURED AGAINST**

  . . .

      **B. COVERAGE C – Personal Property**
      We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

---

[7] The Policy includes further exclusions not listed here.

17

    1. **Fire Or Lightning**

    2. **Windstorm Or Hail**

       . . .

    3. **Explosion**

       . . .

(*Id.* at 21–22).[8] Again, "[w]here the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co.*, 62 So. 3d at 1282 (citation omitted). Because the Policy's language provides that Evanston insures for dwelling, other structures, and personal property caused by specific perils subject to specified exclusions, the Court finds that the Policy is a named perils policy. *See Fisher*, 930 So. 2d at 758 (determining existence of a name perils policy after analyzing the policy's language insuring for direct physical loss to a property, described in a particular coverage, caused by a specified peril, subject to specified exclusions was a named perils policy). As such, Mr. Erickson is not entitled to the burden shifting framework that applies to all risks policies, and his Motion for Partial Summary Judgment (Doc. 44) must be **DENIED**. At trial, Mr. Erickson will carry the burden of proving that the loss he suffered was due to a peril falling within the Policy's coverage. *See Int'l Ship Repair & Marine Servs., Inc.*, 944 F .Supp. at 892 (citation omitted); *Morrison Grain Co.*, 446 F. Supp. at 420.

---

[8] The Policy includes further covered perils not listed here.

## CONCLUSION

For the reasons set forth above, it is **ORDERED:**

1. Evanston's Motion for Partial Summary Judgment (Doc. 43) is **GRANTED in part and DENIED in part**. The Court finds the Policy does not apply to damage caused by flood or storm surge, the Policy's anti-concurrent cause provision is valid and precludes coverage for damage to the Property that was caused by both covered and uncovered events, Mr. Erickson is not entitled to payment for covered water damage beyond the Policy's $10,000 water damage sublimit, and Evanston is not liable to Mr. Erickson for water damage to the Property beyond that which it has already paid. The Court otherwise denies Evanston's Motion for Partial Summary Judgment (Doc. 43).

2. Mr. Erickson's Motion for Partial Summary Judgment (Doc. 44) is **DENIED**.

*- Remainder of page intentionally left blank -*

3. After careful consideration of what remains in this case, the Court strongly encourages settlement discussions. Accordingly, the Court would provide the parties with the option of a settlement conference conducted by a U.S. Magistrate Judge at no cost to the parties. If the parties represent that they, in good faith, believe a settlement is feasible, they may file a joint motion requesting such, which the Court is inclined to grant.

**ORDERED** at Fort Myers, Florida on September 12, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE